FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 04, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN VERNON C., | NO: 2:20-CV-316-RMP |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff John Vernon C.[1], ECF No. 16, and the Commissioner of Social Security ("Commissioner"), ECF No. 17. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), of the Commissioner's denial of his claim for Social Security Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

Security Act (the "Act").  *See* ECF No. 16 at 4.   Having considered the parties'

motions, the administrative record, and the applicable law, the Court is fully

informed.  For the reasons set forth below, the Court grants summary judgment in

favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff applied for DIB and SSI on approximately February 8, 2018, when he

was 34 years old.  Administrative Record ("AR")[2] 80; *but see* AR 215–26

(applications dated March 19, 2018).  Plaintiff alleged a disability onset date of

October 15, 2008, and maintained that he was unable to function and/or work due to

bipolar disorder, post-traumatic stress disorder ("PTSD"), and kidney problems. AR

80.  The application was denied initially and upon reconsideration, and Plaintiff

requested a hearing.  AR 77–78, 147–60, 164–78.

On October 2, 2019, Plaintiff appeared at a hearing, represented by counsel

David Lybbert, before Administrative Law Judge ("ALJ") Mary Gallagher Dilley in

Seattle, Washington.  AR 38.  Plaintiff responded to questions from ALJ Dilley and

counsel.  The ALJ also heard telephonically from Vocational Expert ("VE") Erin

Martz, who responded to questions from the ALJ and Plaintiff's counsel.  At the

---

[2] The AR is filed at ECF No. 14.

outset of the hearing, Plaintiff amended his alleged onset date to December 31, 2013, his date last insured.  AR 41.

Plaintiff stated at his hearing that he graduated from high school, where he was in Special Education classes.  AR 44–45.  He maintains that he is barely able to read and can count change but is overall limited in his ability to add and subtract.  AR 45.  Plaintiff offered that his sister helped him complete his applications for Social Security benefits, and Plaintiff's girlfriend helps him to manage the money that he receives from the Washington State Department of Social and Health Services.  AR 50.  Plaintiff does not smoke, occasionally drinks alcohol, and daily smokes marijuana.  AR 45–46.

Plaintiff recounted his employment history in reverse, with his most recent job prior to the hearing being a job through a temporary service as a pipe fitter for a tarp company.  Plaintiff confirmed approximately nine past work experiences, mostly of short duration.  AR 46–49.  Plaintiff stated many of his jobs were short-term because he is a slow learner and gets irritated and frustrated easily.  AR 51.  These issues sometimes resulted in Plaintiff arguing with a supervisor or coworker or Plaintiff walking off of the job or getting fired.  AR 51–52.

Plaintiff lives in Moses Lake, Washington, and had lived with his girlfriend and her mother since two months prior to the hearing,  AR 50.  Prior to moving in with his girlfriend, Plaintiff lived with his mother for two years.  AR 51.  While

1   Plaintiff explained that he was living with his mother to "help her out," Plaintiff's

2   mother occasionally helped Plaintiff to read or understand something.  AR 51.

3   Plaintiff did not have a driver's license at the time of the hearing, nor did he have

4   reliable access to transportation.  AR 53.

5        Plaintiff enjoyed and was able to maintain a job at a steel supply company in

6   Moses Lake in which his supervisor demonstrated a lot of understanding and

7   patience regarding Plaintiff's mistakes and accommodated Plaintiff's absenteeism

8   due to emotional symptoms.  AR 53–54.  Plaintiff left the job after approximately

9   two years due to "family troubles," and when he sought to return to work at the same

10  steel supply company approximately one year later, the company had no open

11  positions.  AR 54.

12       Plaintiff described the mental health symptoms that he was struggling with

13  around the time of the hearing as: depressed mood; low energy; mind racing and

14  difficulty focusing approximately three times per week; difficulty sleeping;

15  confusion; memory problems; and restlessness.  AR 57.  Although Plaintiff was

16  sleeping better with medications that he took in 2019, the medication caused

17  unwanted side effects such as grogginess.  AR 57–58.  Plaintiff tends to avoid being

18  around other people when he is experiencing anxiety and associated symptoms.  AR

19  59.  Plaintiff reported that he has been married three times and that his anger

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

management issues during his relationships lead to periods of incarceration in his late teens and early twenties.  AR 60.[3]

Plaintiff reported that he lost his driver's license for driving while intoxicated by alcohol and marijuana four or five years before the hearing.  AR 64.  Plaintiff further asserted that he ceased using methamphetamine and cocaine approximately eight years before the hearing.  AR 64.

***ALJ's Decision***

On October 24, 2019, ALJ Dilley issued an unfavorable decision.  AR 21–32. Applying the five-step evaluation process, ALJ Dilley found:

**Step one:** Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013.  Furthermore, Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of December 31, 2013.  AR 23.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit his ability to perform basic work activities: bipolar disorder, PTSD, attention deficit hyperactivity disorder ("ADHD"), and personality disorder.  The ALJ found that Plaintiff experienced physical symptoms including acute renal failure, gastritis, and a right-hand abscess were not severe and

_____

[3] It is unclear from the transcript which relationship(s) Plaintiff is referring to with respect to anger issues leading to incarceration.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

had occurred prior to Plaintiff's date last insured.  AR 24.  The ALJ also noted that

other impairments were mentioned in the record, such as small distal esophageal

diverticulum, small hiatal hernia, cellulitis, dysphagia, mild asthma, reactive airway

disease, and substance abuse in remission that did not cause significant limitations in

functioning, or did not last for a continuous period of twelve months, and were,

therefore, non-severe.  AR 24.  The ALJ found that a "rule/out intellectual disorder,

mild versus borderline intellectual functioning," and bipolar disorder all were not

medically determinable impairments suffered by Plaintiff, but "even were

intellectual disorder or bipolar disorder medically determinable, they would not be

severe and would not add additional limitations than those provided within the

residual functional capacity at finding #5."  AR 24–25.

    **Step three:** The ALJ concluded that Plaintiff's mental impairments,

considered singly and in combination, did not meet or medically equal the severity

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20

C.F.R. §§ 416.920(d), 416.925, and 416.926).  AR 25.  Specifically, the ALJ found

Plaintiff has a moderate limitation in: understanding, remembering, or applying

information; interacting with others; and concentrating, persisting, or maintaining

pace.  AR 25. The ALJ found that Plaintiff has a mild limitation with respect to

adapting or managing oneself.  AR 26.  As a result of finding that Plaintiff does not

have a marked limitation in a broad area of functioning, the ALJ found that Plaintiff

does not meet the "paragraph B" criteria of having at least one extreme or two marked limitations in a broad area of functioning to meet the relevant mental impairment listings 12.04, 12.06, 12.08, and 12.13.  AR 25–26.  The ALJ also explained that she had considered the "paragraph C" criteria and found that the record did not substantiate "the existence of a serious and persistent mental health disorder over a period of at least 2 years with both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorders; and (2) marginal adjustment, that is, a minimal capacity to adapt to changes in environment or to demands that are not already part of the claimant's daily life." AR 26.

**Residual Functional Capacity ("RFC")**: The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "The claimant can understand, remember, and perform simple, routine, repetitive one to three step tasks.  He is able to perform work with no contact with the general public and occasional superficial contact with coworkers that involves no teamwork."  AR 26.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms

"are not entirely consistent with the medical evidence and other evidence in the record" for several reasons that the ALJ discussed.  AR 27.

**Step four:** The ALJ found that Plaintiff is able to perform his past relevant work as a Construction Worker II/Ditch Digger.  AR 30.

**Step five:** The ALJ found that Plaintiff has a high school education, can communicate in English, and was 24 years old on the alleged disability onset, which qualifies him as a "younger individual age 18-49." AR 31.  The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and RFC.  AR 31–32.  Specifically, the ALJ recounted that given Plaintiff's ability to perform work at all exertional levels, with nonexertional limitations, the VE identified the following representative occupations that Plaintiff would be able perform with the RFC: Laundry Worker II, Machine Packager, and Industrial Cleaner.  AR 31–32.  The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from December 13, 2013, through the date of the ALJ's decision.  AR 32.

The Appeals Council denied review.  AR 1.

/ / /

/ / /

/ / /

# LEGAL STANDARD

## *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1

***Sequential Evaluation Process***

2    The Commissioner has established a five-step sequential evaluation process

3 for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  Step one

4 determines if he is engaged in substantial gainful activities.  If the claimant is

5 engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §

6 404.1520(a)(4)(i).

7    If the claimant is not engaged in substantial gainful activities, the decision

8 maker proceeds to step two and determines whether the claimant has a medically

9 severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).

10 If the claimant does not have a severe impairment or combination of impairments,

11 the disability claim is denied.

12    If the impairment is severe, the evaluation proceeds to the third step, which

13 compares the claimant's impairment with listed impairments acknowledged by the

14 Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

15 404.1520(a)(4)(iii); see also 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

16 meets or equals one of the listed impairments, the claimant is conclusively presumed

17 to be disabled.

18    If the impairment is not one conclusively presumed to be disabling, the

19 evaluation proceeds to the fourth step, which determines whether the impairment

20 prevents the claimant from performing work that he has performed in the past.  If the

21

claimant can perform his previous work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered. If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering his residual functional capacity and age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1. Did the ALJ erroneously discount medical opinion evidence from the examining and reviewing medical sources?

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

2.  Did the ALJ erroneously discount some of Plaintiff's subjective symptom testimony or otherwise err in formulating Plaintiff's RFC?

3.  Did the ALJ fail to meet her burden at Step Five?

4.  Did the ALJ erroneously evaluate the mental conditions affecting Plaintiff by failing to properly consider the longitudinal record?

5.  Did the ALJ erroneously fail to categorize intermittent explosive disorder as a severe impairment?

**DISCUSSION**

***Medical Opinion Evidence***

Plaintiff argues that the ALJ erred by failing to offer detailed and supported reasons for partially discounting the opinions of psychological examiner Thomas Genthe, Ph.D., who examined Plaintiff in 2012 and 2018.  ECF No. 16 at 13–14.  Plaintiff also takes issue in his reply brief with the ALJ's treatment of the opinions of Matthew Comrie, Psy.D. and Renee Eisenhauer, Ph.D.  ECF No. 18 at 2.  With respect to the ALJ's treatment of all three medical sources, Plaintiff challenges the ALJ's failure to credit their predictions that Plaintiffs' psychological symptoms likely would interfere with Plaintiff's ability maintain concentration, persistence, and pace for up to 2 hours in a workday and their opinions with respect to difficulty interacting with co-workers.  ECF Nos. 16 at 13–14; 18 at 2.  Plaintiff maintains that the only reason given by the ALJ for not including the limitations found by Drs.

Comrie and Eisenhauer in the hypothetical was that Plaintiff's treatment records reflect "improvement," without finding whether any unspecified improvement "meant that the impairments had changed." ECF No. 18 at 2–3. Plaintiff further argues that "[t]he notations from chart notes listed by the ALJ of 'normalcy' on examination, were typically exams done by non-psychological examiners." ECF No. 18 at 5.

The Commissioner responds that the ALJ assessed that Plaintiff can perform simple, repetitive 1-3 step work that requires no contact with the public and only occasional, superficial interaction with coworkers. ECF No. 17 at 3. The Commissioner maintains that the ALJ's assessment is "largely consistent" with Dr. Comrie and Dr. Eisenhauer's medical opinions and has less overlap with the opinions of Dr. Genthe. The Commissioner maintains that while the ALJ acknowledged that the opinions "are generally supported and consistent with the record," the ALJ was free to ultimately not adopt the opinions "under the new regulations." *Id.* The Commissioner specifies that the new regulations require an ALJ only to explain "how persuasive" she finds a medical opinion, not whether she "rejects" or "accepts" it. *Id.* at 4 (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)). The Commissioner continues that ALJs need only "'explain how [they] considered the supportability and consistency factors for a medical source's medical opinions.'" *Id.* at 5 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

Under the new regulations, the Commissioner maintains, the ALJ's explanation that she considered Plaintiff's recent treatment notes showing improvement goes to whether the opinions of medical sources Genthe, Comrie, and Eisenhauer were consistent with evidence from other sources. *Id.* at 6–7. Moreover, the Commissioner argues, the ALJ "cited numerous exam findings that post-date the opinions [sic] Drs. Genthe, Comrie, and Eisenhauer." *Id.* at 7.

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence and require the ALJ to articulate how persuasive she finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources. *See Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 416.920c, 404.1520c. Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors such as the source's familiarity with other evidence in the claim or an understanding of Social Security's disability program. 20 C.F.R. §§ 416.920c(c), 404.1520c(c).

Supportability and consistency are the "most important" factors, and the ALJ must articulate how she considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. §§

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

416.920c(b)(2), 404.1520c(b)(2)).  With respect to these two factors, the regulations

provide that an opinion is more persuasive in relation to how "relevant the objective

medical evidence and supporting explanations presented" and how "consistent" with

evidence from other sources the medical opinion is.  20 C.F.R. §§ 416.920c(c)(1),

404.1520c(c)(1)).  The ALJ may explain how she considered the other factors, but is

not required to do so, except in cases where two or more opinions are equally well-

supported and consistent with the record.  20 C.F.R. §§ 416.920c(b)(2), (3),

404.1520c(b)(2), (3)

     Courts also must continue to consider whether the ALJ's finding is supported

by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive . . . .").

     The ALJ found the following opinions by Drs. Comrie and Eisenhauer

"somewhat supported and consistent":

> In May 2018, state agency psychological consultant, Matthew Comrie, PsyD, opined the claimant retains the capacity for simple, up to 3-step instructions on a consistent basis (3A/4A). He suggested intermittent interruption of concentration, persistence, and pace due to interference of mental symptoms with occasional supervisor instruction/redirection keeping the claimant on task. He also noted the claimant is able to carry out basic task related social interactions with supervisors and coworkers, but would do best with occasional interactions with coworkers, supervisors and limited interaction with the general public. In a small group, he suggested the claimant would be capable of basic work-related social interactions with supervisors and benefit from redirection. Regarding adaptation, he opined the claimant could work

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

in a setting with infrequent changes, avoidance of hazards, travel to and from work like setting, and carry out goals and plans set by others.

In July 2018, state agency psychological consultant, Renee Eisenhauer, Ph.D, concurred (7A/8A).

AR 29.  The ALJ further found that Drs. Comrie and Eisenhauer's opinions were "generally consistent" with the opinions of Dr. Genthe, whose mental examination of Plaintiff and clinical observations of Plaintiff the ALJ found to be "of significant persuasive value"  AR 29.  The ALJ found that the opinions of Drs. Comrie, Eisenhauer, and Genthe all were consistent with evidence in the record of "minimal observations of psychiatric difficulties in the claimant's treatment records" and noted that "later treatment records show improvement with medication and minimal mental treatment, suggesting the claimant's limitations in adaptation are not as restricted as opined."  AR 29.

The ALJ noted that in August 2018, one month after Dr. Eisenhauer's opinion, Plaintiff declined his provider's recommendation of a referral for medication management.  AR 28, 570.  That treatment record also reflects that the provider counseled Plaintiff to return for a follow-up if his symptoms worsened.  AR 570.  The ALJ further cited records indicating that, despite declining medication management in August 2018, Plaintiff's mental condition had improved by February and March 2019.  AR 834–36, 842–44.  The ALJ also noted that Plaintiff has over the course of the record admitted to not taking prescribed

medications consistently and left counseling for extended periods.  AR 28 (citing

AR 363, 405, 565–66); *see also* AR 566 (indicating that Plaintiff was not returning

to counseling in 2015 after realizing stability and improvement).

The Court acknowledges the Ninth Circuit's observation that "in many mental

health conditions, '[c]ycles of improvement and debilitating symptoms are a

common occurrence.'"  *Smith v. Kilolo Kijakazi*, No. 20-35487, 2021 U.S. App.

LEXIS 29630, at *17 (9th Cir. Oct. 1, 2021) (quoting *Garrison v. Colvin*, 759 F.3d

995, 1017 (9th Cir. 2014).  Therefore, where cycles of improvement and debilitating

symptoms are a function of a claimant's mental health condition, "it is error for an

ALJ to pick out a few isolated instances of improvement . . . and to treat them as a

basis for concluding a claimant is capable of working."  *Id*.  However, here, the ALJ

cited to substantial evidence in the record to support her finding that "when the

claimant has been compliant with treatment, he has been responsive to it" and that

his condition had improved by February and March 2019.  AR 28, 363, 405, 565–66,

834–36, 842–44.  However, Plaintiff has not cited to evidence in the record

supporting that his allegedly debilitating symptoms and periods of improvement are

an inherent aspect of his mental condition.

Rather, the ALJ's reasoning and extensive citation to the record indicate that

she evaluated the supportability and consistency of the opinions Drs. Genthe,

Comrie, and Eisenhauer considering the objective record and that the ALJ had

reasons based on the objective record to doubt any prediction from those medical sources that Plaintiff would be unable to sustain concentration and pace for two hours or more each day. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5859 (Jan. 18., 2017) (a "medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion"). Moreover, under the new regulations the ALJ was not required to provide a reason for her treatment of each opinion, only reasons with respect to each source. *See* 20 C.F.R. §§ 416.920c(b)(1),  404.1520c(b)(1)).  The Court finds no error in ALJ Dilley's treatment of medical source opinions.

### *Subjective Symptom Testimony*

Plaintiff argues that the ALJ erred in making an adverse credibility finding with respect to Plaintiff's claimed limitations by cherry-picking inconsistencies. ECF No. 16 at 15.  Plaintiff maintains that the record "provides plenty of reasons" why Plaintiff "chose to change treatment, stop treatment, or stop certain medications." ECF No. 18 at 5.  Plaintiff cites in support a chart note from August 2018 that Plaintiff asked for a referral back to counseling and for an increased dosage of a medication to treat his irritability. *Id.* at 5–6 (citing AR 567).  Plaintiff also cites a chart note indicating that Plaintiff was prescribed two additional

medications in November 2018 to attempt to better treat his overall agitation and anxiety.  *Id.* at 6 (citing AR 613–15).

The Commissioner responds that the ALJ provided clear and specific reasons for partially discrediting Plaintiff's testimony, including that Plaintiff's failure to seek treatment or to follow a prescribed course of treatment was not adequately explained.  ECF No. 17 at 9 (citing *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012)).  The Commissioner cites specifically to evidence indicating that Plaintiff stopped therapy without explanation between March 2014 and February 2015, did not take medication that was prescribed to him in 2018, and declined medications that were recommended.  *Id.* (citing AR 28, 363, 405, and 570).  The Commissioner also maintains that the ALJ relied on substantial evidence in the record in finding that Plaintiff's mental condition stabilized and improved when he accepted and followed treatment.  *Id.* at 9–10 (citing AR 28, 565, 566, 618, 624, 834, 836, 842).  Lastly, the Commissioner cites the Court to evidence in the record indicating that Plaintiff inconsistently reported the severity or persistence of his mental health symptoms.  *Id.* at 11 (citing AR 358, 396, 406–07, 425, 568, 609, 612, 710, 834, 837, 844–45).  The Commissioner maintains that the ALJ's interpretation of waxing and waning symptoms is entitled to deference consistent with *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).  *Id.* at 11–12.

1    To reject a claimant's subjective complaints, the ALJ must provide "specific,

2    cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)

3    (internal citation omitted).  The ALJ "must identify what testimony is not credible

4    and what evidence undermines the claimant's complaints." *Id.*  Subjective symptom

5    evaluation is "not an examination of an individual's character," and an ALJ must

6    consider all of the evidence in an individual's record when evaluating the intensity

7    and persistence of symptoms.  *See* SSR 16-3p, 2016 SSR LEXIS 4 (2016).

8        In deciding whether to accept a claimant's subjective pain or symptom

9    testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d

10    1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

11    presented objective medical evidence of an underlying impairment 'which could

12    reasonably be expected to produce the pain or other symptoms alleged.'"

13    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

14    *Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

15    is no evidence of malingering, "the ALJ can reject the claimant's testimony about the

16    severity of her symptoms only by offering specific, clear and convincing reasons for

17    doing so." *Smolen*, 80 F.3d at 1281.

18        Reviewing the ALJ's decision, the Court identifies several clear, specific, and

19    convincing reasons, in the context of the full record, for not fully accepting

20    Plaintiff's statements concerning the intensity, persistence, and limiting effects of his

21

1    claimed symptoms and their effect on his ability to work.  The ALJ found an

2    inconsistency between the "regular notations in the claimant's treatment records of

3    minimal psychiatric observations" and Plaintiff's "allegations of extremely limiting

4    mental health symptoms" and cited to substantial evidence in the record of those

5    inconsistent notations.  AR 28–29 (citing to over two dozen materials in the record).

6    The ALJ also cited to the treatment record in which Plaintiff declined a

7    recommendation for a referral for medication management several months after

8    filing for disability benefits.  AR 28, 570.  Even if the Court were to identify the

9    evidence that Plaintiff maintains supports why Plaintiff elected to stop treatment or

10   stop taking certain medications, the Court is bound to uphold the ALJ's conclusion,

11   where, as here, "evidence is susceptible to more than one rational interpretation."

12   *Ford*, 950 F.3d at 1156 (internal quotation omitted).

13         The Court does not find error in the ALJ's treatment of Plaintiff's subjective

14   symptoms testimony.

15         ***Step Five Evaluation***

16         Plaintiff argues that the ALJ "ignored significant evidence of more severe

17   impairments than included in ALJ Dilley's RFC assessment and hypothetical

18   question to the vocational expert, this renders the Commissioner's step five

19   determination invalid."  ECF No. 16 at 17.  The Commissioner argues that

20   substantial evidence supports the ALJ's step five determinations.  ECF No. 17 at 15.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

1    An ALJ is not required to accept as true limitations alleged by a claimant and

2    may decline to include those limitations in the vocational expert's hypothetical if

3    they are not supported by sufficient evidence.  *See Bayliss v. Barnhart*, 427 F.3d

4    1211, 1217–18 (9th Cir. 2005).  Plaintiff's argument that the ALJ erred in the

5    limitations posed to the vocational expert derives from Plaintiff's challenges to the

6    medical source opinions and subjective symptom testimony that the ALJ discounted

7    in determining Plaintiff's RFC.  Having determined that the ALJ discounted certain

8    evidence of Plaintiff's limitations for legally permissible reasons, the Court finds no

9    error with respect to the ALJ's step-five analysis.

10   ### *Longitudinal Record*

11   Plaintiff argues in his Motion, without preserving the issue in his reply, that

12   ALJs must take a "longitudinal view" of records where a claimant's mental health

13   condition waxes and wanes.  ECF No. 16 at 18.

14   The Commissioner responds that Plaintiff cannot show prejudice from the

15   ALJ's focus on more recent records because he is seeking SSI only from February

16   2018 and DIB payments from February 2017 onward, and substantial evidence

17   documents improvement during the period relevant to the benefits.  ECF No. 17 at

18   17 (citing 20 C.F.R. § 404.315(a)(4) to support that Plaintiff, at most, could receive

19   DIB payments beginning February 2017).

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

The Court finds no authority to support that the ALJ erred by relying more heavily on recent treatment records to substantiate improvement in Plaintiff's mental condition.  The ALJ's decision also reviews records throughout Plaintiff's lengthy treatment history. Therefore, the Court finds that Plaintiff did not establish any error nor prejudice in relation to Plaintiff's longitudinal treatment record.

### *Intermittent Explosive Disorder*

Plaintiff argues in his Motion, without preserving the issue in his reply, that the ALJ erred by failing to categorize Intermittent Explosive Disorder as one of Plaintiff's severe impairments.  The Commissioner argues that the ALJ explicitly stated that "'professionals have differed with regard to the appropriate psychiatric diagnosis for the claimant'" and "'this decision addresses all of the limitations that the claimant has alleged or have been opined, no matter the diagnostic label.'"  ECF No. 17 at 19 (quoting AR 24).

Plaintiff does not indicate that Intermittent Explosive Disorder involves any psychological symptoms that the ALJ did not consider with respect to mental conditions that she found to be severe impairments, and Plaintiff does not direct the Court to any evidence of a functional limitation unique to Intermittent Explosive Disorder that the ALJ should have included in the RFC.  Even if the ALJ erred at Step Two by neglecting to determine that Intermittent Explosive Disorder is one of

Plaintiff's severe impairments, and the Court does not find that the ALJ erred, Plaintiff has not shown any prejudice resulting from the alleged error.

Having addressed all issues raised by the parties' cross-motions for summary judgment, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 16, and grants Defendant Commissioner's Motion for Summary Judgment, ECF No. 17.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3.    Judgment shall be entered in Defendant's favor.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close the file** in this matter.

**DATED** February 4, 2022.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25